*257.25177*

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BAY GROUP HEALTH CARE, LLD, ) <br> NORMAN BANGALAN and ) <br> MARILYN BANGALAN, ) <br>                  Plaintiffs, ) <br> ) <br>   v. ) <br> ) <br> GINSBERG JACOBS, LLC, THOMAS ) <br> LOMBARDO, TRACY STEINDEL, ) <br> and GABRIEL MATHLESS, ) <br>                  Defendants. ) | Case No. 15-cv-986 |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
COMBINED MOTION TO DISMISS AND FOR SUMMARY JUDGMENT**

Now come the defendants, GINSBERG JACOBS, LLC ("Ginsberg Jacobs"), THOMAS LOMBARDO ("Lombardo"), TRACY STEINDEL ICKES f/k/a TRACY STEINDEL ("Steindel"), and GABRIEL MATHLESS ("Mathless"), by and through their attorneys, TRIBLER ORPETT & MEYER, P.C., and in moving to dismiss Plaintiffs' Complaint, pursuant to FRCP 12(b)(6), and for summary judgment, pursuant to FRCP 56, state as follows:

**INTRODUCTION**

Plaintiffs have filed a single-count complaint for legal malpractice against Defendants. Plaintiffs claim that two of the four named Defendants – Gabriel Mathless and the law firm of Ginsberg Jacobs – engaged in a conflict of interest when they confessed a judgment on behalf of Plaintiffs in underlying litigation. It is undisputed that Plaintiffs had defaulted on corporate guarantees on indebtedness pursuant to a promissory note issued to Defendants' client, Bridgeview Bank Group (the "Bank"). Plaintiffs acknowledge that they were indebted under the guaranties, that they agreed to confess judgment in the event of default on the guaranties, and that they defaulted on their obligations pursuant to the guaranties. Despite the foregoing,

1

Plaintiffs claim that all Defendants committed legal malpractice as a result of acting in an impermissible conflict of interest in the underlying litigation.

Notably, Plaintiffs make no allegation that they have ever been in an attorney-client relationship with attorneys Lombardo and/or Steindel. For this reason, alone, no legal malpractice action may lie against Lombardo and Steindel and they should be dismissed from this lawsuit with prejudice.

Further, Plaintiffs have filed the instant lawsuit despite having clearly and unequivocally released all claims and potential claims against all Defendants. After the confessed judgments were vacated, Plaintiffs relented and settled the claims on their guaranties. In doing so, all Plaintiffs agreed to release any and all claims against the underlying claimant, Bridgeview Bank Group, and its attorneys. Plaintiffs acknowledge in their own pleadings that all Defendants – Ginsberg Jacobs, Lombardo, Steindel and Mathless – were the bank's attorneys. Because Plaintiffs have released all claims against all Defendants, summary judgment should be entered in favor of all Defendants.

## STATEMENT OF FACTS

In March of 2011, Open Arms Health Care, Inc. ("Open Arms") took out a loan in the amount of $818,000 from Bridgeview Bank Group (the "Bank"). (¶ 13.)[1] Open Arms issued a promissory note (the "Note") to the Bank evidencing its obligations pursuant to the loan agreement. (¶ 13.) All Plaintiffs – Norman and Marilyn Bangalan and Bay Group, LLC – signed commercial guaranties guaranteeing payment on the Note. (¶¶ 13-14.) Under the terms of the guaranties, each Plaintiff agreed that the Bank could confess judgment on their behalf in the

---

[1] Unless otherwise indicated, all factual citations are to the paragraphs contained within Defendants' Statement of Undisputed Material Facts, in the following format (¶ [paragraph of Defendants' Statement of Undisputed Material Facts].)

2

event of a default on the Note. (¶¶ 13-14 and Exhibits A-C to Exhibit 2 to Plaintiff's Complaint, filed as Docket No. 1 in this litigation.)

Open Arms defaulted on the Note and, in February of 2013, the Bank sought to recover on the guarantees. (¶ 16.) The Bank, represented by its attorneys, Defendants Lombardo, Mathless and Steindel and the law firm of Ginsberg Jacobs, filed an action for confession of judgment against all plaintiffs. (¶ 16.) Mathless, as authorized to do under the terms of the guaranties, waived service of the pleading on the Plaintiffs herein. (¶ 19 and Exhibits A-C to Exhibit 2 to Plaintiff's Complaint.) Pursuant to the terms of the guaranties, Mathless also signed documents confessing judgment on behalf of all Plaintiffs herein. (¶ 18 and Exhibits A-C to Exhibit 2 to Plaintiff's Complaint.) Based on the confessions, on February 28, 2013, the Circuit Court of Cook County, Illinois, ("Circuit Court") entered a judgment in favor of the Bank and against the Plaintiffs herein in the amount of $823,018.18. (¶ 20.)

Plaintiffs later challenged the validity of the confessed judgment and prevailed. (¶ 22.) On or about November 5, 2013, the Circuit Court vacated the judgment on the basis that the guaranties contained a definition of "indebtedness" that could not support a judgment by confession. (¶ 20.) After re-opening the litigation regarding their liability as guarantors, Plaintiffs settled the Bank's claim, agreeing, *inter alia*, to provide the Bank with a deed to the property purchased with the funds from the loan in exchange for the Bank's withdrawal of its claims of indebtedness under the Note and guaranties. (¶¶ 24-30; Affidavit of Jane Shifrin, ¶¶ 1-2; Exhibit A thereto; and Deed in Lieu of Foreclosure, p. 1, attached to the Affidavit of Jane Shifrin as Exhibit 1.)

The settlement also involved mutual releases, memorialized in a release and settlement agreement entitled Deed in Lieu of Foreclosure Agreement ("Release"). (Id.) Under the terms of

3

the Release, Plaintiffs agreed to release any and all claims against the Bank, its attorneys, and certain others. (Id.) The Release provides, in pertinent part:

> **5.     MUTUAL RELEASES**
>
> (A)     **Definitions.** For purposes of this Agreement, the following terms have the following meanings:
>
> i. "Claims" shall mean any and all manner and kinds of debts, damages, claims, defenses, counterclaims, actions, causes of action, lawsuits, sums of money, accounts, rights, interests, injuries, attorneys' fees, costs, expenses, compensation, covenants, controversies, agreements, promises, judgments, executions, demands, reckonings, bonds, bills, specialties, trespasses and variances whatsoever, in law, equity or otherwise, whether based in contract, equity, tort, negligence, product liability, intentional tort, strict liability, express warranty, implied warranty, fraud, consumer fraud, criminal law, by statute, other legal or equitable theory of any kind, that in any way arise out of or are related to any fact or event that occurred prior to the Effective Date of this Agreement or that involve the Parties.
>
> ii. "Release" or "Releases" shall mean the release, waiver, discharge, acquittal, relinquishment, forfeiture and forgiveness of any and all Claims against the Party receiving the release.
>
> iii. Additional terms are defined as indicated throughout this Agreement.
>
> The descriptive headings of the several paragraphs of this Agreement are inserted for convenience only and do not constitute part of this Agreement.
>
> (B)     In exchange for valid Consideration, Mortgagee Releases all Claims against the Borrower Parties and their respective, assigns, administrators, beneficiaries, heirs, legal representatives, agents, attorneys, family members, transferees and other related persons, other than to enforce the terms of this Agreement.
>
> (C)     In exchange for valid Consideration, the Borrower Parties [Plaintiffs] hereby Release any and all Claims against Mortgagee [the Bank], including Mortgagee's [the Bank's] respective trustees, assigns, administrators, beneficiaries, receivers, legal representatives, agents, attorneys, employees, managers, members, shareholders, partners, and other related persons and/or entities, other than to enforce the terms of this Agreement. Section 5(A) and 5(8) shall collectively be referred to herein as ("Release").

4

    (D)    Each Release set forth in Paragraphs 5(8) and 5(C) above:

        i. Extends only to Claims arising out of or attributable to events or circumstances occurring any time prior to the Effective Date of this Agreement; and

        ii. Extends and inures to the benefit of the Parties' respective past, present and future officers, directors, shareholders, members, managers, owners, principals, employees, agents, partners, successors, assigns, subsidiaries, affiliates, parent companies, related companies, administrators, beneficiaries, receivers, trustees, legal representatives, and any other related persons or entities whose claims may arise by or through them;

        iii. Extends to claims both known and unknown, absolute or contingent, choate and inchoate, direct or derivative;

        iv. Shall constitute a full, complete, absolute, unconditional and final waiver and discharge of claims; and

        v. Shall be interpreted in the broadest possible manner but shall not be construed to release any of the Parties from their respective obligations under this Agreement.

(Deed in Lieu, ¶ 5, attached to the Affidavit of Jane Shifrin as Exhibit 1.)[2]

**ARGUMENT**

**I. LEGAL STANDARDS.**

  A. <u>12(b)(6) Dismissal.</u>

Federal Rule of Civil Procedure ("Rule") 12 provides that a defendant may raise certain defenses by motion in lieu of an answer. Rule 12(b)(6) permits motions to dismiss a complaint for failing to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Equal Opportunity Commission v. Concentra*, 496 F.3d 773, 778-79 (7th Cir. 2007). However, a plaintiff may plead himself out of court by making

---

[2] For the sake of legibility and simplicity, the Deed in Lieu/Release will be referred to hereinafter in citations as simply the "Release." All such citations refer to the Deed in Lieu attached to Ms. Shifrin's Affidavit, which is in turn attached to Defendants' Statement of Undisputed Material Facts.

factual allegations that, if accepted as true, show that his legal rights were not invaded. *American Nurse Association v. State of Illinois*, 783 F.2d 716, 724 (7th Cir. 1986).

    B.  <u>Summary Judgment Pursuant to Release.</u>

Release is an affirmative defense, Fed.R.Civ.P. 8(c), and the existence of a defense does not undercut the adequacy of the claim. *See Gomez v. Toledo,* 446 U.S. 635, 639–41, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Rather, an assertion that a claim is barred by release should be raised through summary judgment. *Deckard v. Gen. Motors Corp.*, 307 F.3d 556, 560 (7th Cir. 2002).

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving part is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

    C.  <u>Illinois Common Law Applies.</u>

When a federal court sits in diversity jurisdiction, state court precedent on issues of state law are binding. *RAR Incorporated v. Turner Diesel Ltd.*, 107 F.3d 1272, 1276 (7th Cit. 1997). Because this case arises from the diversity jurisdiction of a federal court sitting in Illinois, this Court should apply Illinois contract law to interpret the release. *See Strachan v. Nisbet,* 202 F.2d 216, 218 (7th Cir.1953); *Deckard v. Gen. Motors Corp.*, 307 F.3d 556, 560 (7th Cir. 2002).

**II.  DEFENDANTS LOMBARDO AND STEINDEL SHOULD BE DISMISSED PURSUANT TO FRCP 12(B)(6) BECAUSE NEITHER HAD AN ATTORNEY-CLIENT RELATIONSHIP WITH ANY PLAINTIFF.**

As Plaintiffs' counsel's website makes clear, "To prove a claim of legal malpractice, the former client must plead and prove that [a]n attorney-client relationship existed [in addition to other elements of the claim]" citing to *Tri-G, Inc. v. Burke, Bosselman & Weaver, 222 Ill. 2d 218, 225-26 (2006).*" (The Clinton Law Firm website, http://www.clintonlaw.net/legal-

malpractice.html, last visited April 2, 2015.) Here, Plaintiffs have not pleaded and could not plead in a good faith manner that Defendants Lombardo and/or Steindel were ever in an attorney-client relationship with any Plaintiff. (See Plaintiffs' Complaint.) As such, there is no basis by which any Plaintiff could establish that Lombardo or Steindel owed the duties alleged in Plaintiffs' Complaint or any other duty of care sufficient upon which to establish Lombardo's or Steindel's liability for Plaintiffs' alleged damages. As a result, they should be dismissed from the instant matter promptly and with prejudice.

Under Illinois law, in order to state a cause of action for negligence, a plaintiff must establish: (1) the existence of a duty of care on the part of the defendant to the plaintiff; (2) a breach of that duty; and (3) that the breach proximately caused the plaintiff's injuries. *Pelham v. Griesheimer*, 92 Ill.2d 13, 18 (1982); *Cunis v. Brennan*, 56 Ill.2d 372, 374 (1974); *Nowak v. Coghill*, 296 Ill.App.3d 886, 892 (2d Dist. 1998).

Whether a duty exists is a question of law to be answered by the trial court. *Nowak*, 296 Ill.App.3d at 892. The existence of a duty arises from the defendant and the plaintiff standing in such a relationship to one another that the law imposes upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff. *Schechter v. Blank*, 254 Ill.App.3d 560, 563 (1st Dist. 1993). As such, an attorney will only be liable in negligence to persons to whom he or she owes a duty. *Id.* at 563.

In 1879, the U.S. Supreme Court considered the question to whom an attorney owes a legal duty of care and concluded that attorney owe duties only to their clients. *Savings Bank v. Ward*, 100 U.S. 195 (1879). Although the bright-line rule enunciated in *Savings Bank* has been somewhat eroded over time, the general rule holds fast. Generally, under Illinois law, an attorney owes a duty of care only to his client and not to third parties, in order "to protect the personal,

highly confidential and fiduciary nature of the attorney-client relationship. *Pelham*, 92 Ill.2d at 19.

Under the general rule, there can be no dispute that neither Lombardo nor Steindel owed any Plaintiff a duty. Neither represented any Plaintiff.

There is a single exception to the general rule. An attorney will owe a duty to a third party, non-client only when the attorney has been retained by his client specifically for the purpose of benefitting the third party. *Pelham*, 92 Ill.2d at 21; *Builders Bank v. Barry Finkel & Associates*, 339 Ill.App.3d 1, 8-9 (2003). As such, an attorney will only owe such a duty to the non-client where "the primary purpose and intent of the attorney-client relationship itself was to benefit or influence the third party." *Kopka v. Kamensky & Rubenstein*, 354 Ill.App.3d 930, 934-35 (1st Dist. 2005); See also, *Pelham*, 92 Ill.2d at 21.

The *Pelham* court explicitly rejected the proposition that an attorney owes a duty to a client's adversary:

> Where a client's interest is involved in a proceeding that is adversarial in nature, the existence of a duty of the attorney to another person would interfere with the undivided loyalty which the attorney owes his client and would detract from achieving the most advantageous position for his client. . . . In cases of an adversarial nature, in order to create a duty on the part of the attorney to one other than a client, there must be a clear indication that the representation by the attorney is intended to directly confer a benefit upon the third party.

*Pelham*, 92 Ill.2d at 22-23.

Here, there is no allegation that Lombardo's or Steindel's representation of the Bank was for the specific, primary purpose of benefiting Plaintiffs – the Bank's adversaries. (See Plaintiffs' Complaint.) Indeed, as the *Pelham* opinion makes clear, the third party beneficiary doctrine leaves no room for argument that an attorney owes a duty to a client's adversary.

Here, the allegations of Plaintiffs' Complaint leave no room for interpretation or dispute: Lombardo and Steindel represented Plaintiffs' *adversary*, the Bank, in the complained-of matters. (See Plaintiffs' Complaint.) There was no attorney-client relationship between Plaintiffs and either Lombardo or Steindel and the primary purpose of Lombardo's and Steindel's representation of the Bank was not to benefit Plaintiffs, the Bank's *adversaries*. For this reason, this Court should dismiss Lombardo and Steindel from this matter, with prejudice.

## II. ALL DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFFS RELEASED ANY AND ALL CLAIMS AGAINST THEM

In the Release, Plaintiffs clearly and unambiguously waived all claims against all Defendants and released them from any potential liability stemming from the Underlying Litigation. By the terms of the agreement, Plaintiffs "Release[d] any and all Claims against .. [the Bank's] attorneys" and others. (Release, p. 7, ¶ 5(c).) Plaintiffs agreed that the Release "[s]hall constitute a full, compete, absolute, unconditional and final waiver and discharge of claims [and] [s]hall be interpreted in the broadest possible manner…." (Release, p. 7, ¶ 5(c)(iv)-(v).) Based on the clear, unambiguous and unequivocal language of the Release, Plaintiffs are barred from any claims, including those raised in the instant litigation, against any Defendant, each of whom was, according to the allegations of Plaintiffs' own Complaint, a Bank attorney.

"A release is a contract wherein a party relinquishes a claim to a person against whom the claim exists, and a release is subject to the rules governing the construction of contracts." *Carona v. Ill. Cent. Gulf R. Co.*, 203 Ill.App.3d 947, 951 (5th Dist. 1990). When reviewing a release, a court should apply contract law principles because a release is a contract. *Farm Credit Bank of St. Louis v. Whitlock,* 144 Ill.2d 440, 447 (1991).

Under Illinois law, the Court "must interpret the words of the contract with their common and generally accepted meanings" and must construe the words of the contract "within the

9

context of the contract as a whole." *William Blair & Co. v. FI Liquidation Corp.*, 358 Ill.App.3d 324, 335 (1st Dist.2005) (internal citations omitted). The court's primary objective is give effect to the parties' intent. *Gallagher v. Lenart,* 226 Ill.2d 208, 232, (2007). "A court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties; intent." *Id.* at 233. Clear and explicit written agreements that are unambiguous will be enforced as written without the assistance of extrinsic or parol evidence. *Rakowski v. Lucente,* 104 Ill.2d 317, 323 (1984). A court should only resort to extrinsic evidence to determine the parties' intent where a contract is susceptible to more than one meaning. *Gallagher,* 226 Ill.2d at 233.

Where the terms of a release are "clear and explicit, the court must enforce them as written." *Rakowski v. Lucente*, 104 Ill.2d 317, 323 (Dist. 1984). An unambiguous release will be applied as written without the assistance of parol or extrinsic evidence. *Rakowski*, 104 Ill.2d at 323

Here, the terms of the Release are clear and unambiguous. In the Release, Plaintiffs agreed to the following:

> In exchange for valid Consideration, the Borrower Parties[/Plaintiffs] hereby Release any and all Claims against Mortgagee [/the Bank], including [the Bank's] respective trustees, assigns, administrators, beneficiaries, receivers, legal representatives, agents, <u>*attorneys*</u>, employees, managers, members, shareholders, partners, and other related persons and/or entities, other than to enforce the terms of this Agreement.

(Release, p. 7 ¶ 5(c)) (emphasis added).

By its own terms, the release is unequivocal, complete, and absolute. The Release:

> iii. Extends to claims both known and unknown, absolute or contingent, choate and inchoate, direct or derivative;
>
> iv. Shall constitute a full, compete, absolute, unconditional and final waiver and discharge of claims; and

       v. Shall be interpreted in the broadest possible manner but shall not be construed to release any of the Parties from their respective obligations under this Agreement.

(Release, ¶ 5(c)(iii)-(v).)

As is clear from the foregoing, Plaintiffs have released any and all claims against all Defendants herein. As a result, Defendants are entitled to summary judgment.

## CONCLUSION

Wherefore, defendants, Ginsberg Jacobs, LLC, Thomas Lombardo, Tracy Steindel Ickes f/k/a Tracy Steindel, and Gabriel Mathless pray that this Court dismiss all claims against Thomas Lombardo and Tracy Steindel Ickes f/k/a Tracy Steindel and enter summary judgment in favor of all remaining Defendants and against all Plaintiffs, and for any other relief that this Court deems just.

Respectfully submitted,

TRIBLER ORPETT & MEYER, P.C.

By:    *s/Jeremy N. Boeder*
One of the Attorneys for Defendants, Ginsberg Jacobs, LLC, Thomas Lombardo, Tracy Steindel Ickes f/k/a Tracy Steindel, and Gabriel Mathless

Harlene G. Matyas, Esq. - ARDC# 1796879
  (hgmatyas@tribler.com)
Jeremy N. Boeder, Esq. - ARDC# 6285771
  (jnboeder@tribler.com)
TRIBLER ORPETT & MEYER, P.C.
225 West Washington, Suite 1300
Chicago, Illinois 60606
Telephone: (312) 201-6400
Fax: (312) 201-6401

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of **Defendants' Memorandum in Support of Their Combined Motion to Dismiss and for Summary Judgment,** was served upon:

>Edward X. Clinton, Jr.
>Julia C. Williams
>The Clinton Law Firm
>111 W. Washington Street
>Suite 1437
>Chicago, IL 60602

service was accomplished pursuant to ECF as to Filing Users and complies with LR 5.5 as to any party who is not a Filing User or represented by a Filing User by mailing a copy to the above-named attorney or party of record at the address listed above, from 225 W. Washington Street, Suite 1300, Chicago, IL 60606, prior to 5:00 p.m. on the 4th day of May, 2015, with proper postage prepaid.

>s/ Jeremy N. Boeder
>an Attorney

Harlene G. Matyas, Esq. ARDC#1796879
Jeremy N. Boeder, Esq. ARDC#6285771
Tribler Orpett & Meyer, P.C.
225 W. Washington Street, Suite 1300
Chicago, IL 60606
(312) 201-6400