IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT – LAW DIVISION
TAX AND MISCELLANEOUS REMEDIES SECTION

| | |
|---|---|
| BRIDGEVIEW BANK GROUP, an Illinois, Banking corporation, <br><br> Plaintiff, <br><br> vs. <br><br> BAY GROUP HEALTH CARE, LLC, an Illinois Limited liability company; NORMAN BANGALAN and MARILYN BANGALAN, <br><br> Defendants. | ) ) ) ) ) ) ) No. 13 L 50131 ) ) ) ) ) ) ) |

## MEMORANDUM DECISION AND JUDGMENT ORDER

This matter is before the Court on a motion to disqualify opposing counsel Ginsberg Jacobs LLC ("Ginsberg") and its attorneys from continuing to represent Plaintiff in this cause, pursuant to rules 1.7 and 1.10(a) of the Illinois rules of professional conduct (2010) (the "2010 RPC's"), by Norman Bangalan ("Norman") and Marilyn Bangalan ("Marilyn"), (the "Bangalan's movants").

## STATEMENT OF FACTS

This case involves a claim by the Plaintiff Bridgeview Bank Group ("Plaintiff") for confession judgments based upon three guaranties purportedly given by Norman, Marilyn and a limited liability company called Bay Group Health Care, LLC ("Bay Group") to secure a loan from the Plaintiff to Open Arms Home health Care, Inc. ("Open Arms"). The introductory paragraph of the complaint ("Compl.") (Exhibit A) identifies Ginsberg as the Plaintiff's attorney of record, as does the firm identification block at its end.

The complaint attaches three documents entitled "confession," one each for Bay Group, Norman and Marilyn (Compl. At Group Exh. E). Each purported "Confession" bears a signature above the name "Gabriel L. Mathless, Attorney at Law" ("Mathless"). Each purported "Confession" reads as follows in relevant part:

1

> The defendant, Norman Bangalan, by Gabriel L. Mathless, its [sic] attorney, waives service of process and confesses that there is due from Defendant Norman Bangalan to the Plaintiff...

(Emphasis added). As the italicized text indicates, Mathless identifies himself as the attorney for each defendant in the first sentence of each purported "Confession."

Although the "Confessions" identify him only as an "Attorney at Law," Mathless is a Ginsberg associate attorney, as evidenced by the Ginsberg website (See Affidavit of Marco Berrios – Exhibit B). This Court should find the fact that the "Confessions" do not disclose that relationship as a disturbing lack of candor.

Norman and Marilyn more to disqualify Ginsberg from continuing to represent the Plaintiff in this cause because the 2010 RPC's absolutely prohibit members of the same law firm from representing opposing parties before the same tribunal in the same matter.

## ISSUES PRESENTED

Whether a Plaintiff seeking a judgment by confession may use an attorney from his law firm to file a cognant on behalf of the defendant on the same confession document.

## ARGUMENTS OF THE PARTIES AND COMMENTS AND DECISION BY THE COURT

Defendant contends that a Plaintiff seeking a judgment by confession may use an attorney from his law firm to file a congant on behalf of the defendant on the same confession document. Defendant argues as follows:

2010 RPC 1.7 addresses "concurrent conflicts of interest," and reads as follows, in relevant part:

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if.
(1) the representation of one client will be directly adverse to another client; or

(b) Notwithstanding the existence of a current conflict of interest under paragraph (a), a lawyer may represent a client if:

> (3) The representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and...

(Emphasis added).

2010 RPC 1.7(a)(1) prohibits a lawyer from representing one client against another in the same case. While 2010 RPC 1.7(b) lists exceptions for situations where the lawyer obtains informed consents from conflicted clients, 2010 RPC 1.7(b)(3) absolutely forbids the concurrent representation of one client against another within the same litigation.

The Comments to 2010 RPC 1.7 include language clarifying the rules governing representation where a conflict exists. The relevant portions from the comment section entitled prohibited representations" read as follows:

> [14] Ordinarily, clients may consent to representation not-withstanding a conflict. However, as indicated in paragraph (b), some conflicts are nonconsentable, meaning that the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent. When the lawyer is representing more than one client, the question of consentability must be resolved as to each client.
>
> [17] Paragraph (b)(3) describes conflicts that are nonconsentable because of the institutional interest in vigorous development of each client's position when the clients are aligned directly against each other in the same litigation or other proceeding before a tribunal. Whether clients are aligned directly against each other within the meaning of this paragraph requires examination of the context of the proceeding. Although this paragraph does not preclude a lawyer's multiple representation of adverse parties to a mediation (because mediation is not a proceeding before a "tribunal" under Rule 1.0(m)), such representation may be precluded by paragraph (b)(1).
>
> [23] Paragraph (b)(3) prohibits representation of opposing parties in the same litigation, regardless of the clients' consent.

(Emphasis added).

As paragraph 14 and 17 of the comment indicate, an Illinois lawyer cannot disregard 2010 RPC 1.7(b)(3)'s absolute ban against the concurrent representation of one client against another within the same litigation, and the client's "consent" to such a conflict does not matter.

It is no answer for Plaintiff to say Mathless is not the individual lawyer who signed the complaint on behalf of Plaintiff. 2010 RPC 1.10(a) reads as follows:

> While lawyers are associated in a firm, no one of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

The Comment to 2010 RPC 1.10 includes the language which clarifies the rules governing imputed disqualification. The relevant portion from the section entitled "principles of imputed disqualification" reads as follows, in relevant part:

> [2] the rule of imputed disqualification stated in paragraph (a) gives effect to the principle of loyalty to the client as it applies to lawyers who practice in a law firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client, or from the premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated. Paragraph (a) operates only among the lawyers currently associated in a firm.

Almost ninety years ago, the Illinois Supreme Court summarized the fundamental principle at issue an attorney's undivided loyalty as follows:

> The rule has long been firmly established that an attorney cannot represent conflicting interests or undertake to discharge inconsistent duties. When he has once been retained and received the confidence of this client, he cannot enter the services of those whose interests are adverse to that of his client or former client as in effect to be a party thereof ... It is the glory of the legal profession that its fidelity to its client can be depended upon; ...

(Emphasis added). People v. Gerold, 265 Ill. 448, 477-78 (1914). These concerns regarding the lawyer's duty of undivided loyalty remain equally valid today.

Motions to disqualify an opposing party's counsel are "... regard as a drastic measure which courts should grant only when necessary." SK Handtool Corp. v. Dresser Indust., Inc., 246 Ill. App. 3d 979, 989 (1st Dist. 1993). "Generally, our courts disapprove of the use of disqualification motions as a tactical weapons in litigation insofar as such motions can be used for purposes of harassment." Id. Such motions serve to destroy the attorney client relationship by preventing a party from freely retaining the

4

counsel of his or her choice." Id. For these reasons, "Courts must be vigilant in ensuring that motions to disqualify are not misused as tactical weapons for the purpose of harassment." In re Estate of Wright, 377 Ill. App. 3d 800, 804 (2nd Dist. 2007).

The Bangalans apparently believe they should be treated specially, and are somehow different from all the other debtors who authorized confessions of judgment for more than 100 years. The Bangalans argue the Lender's counsel should be disqualified, despite crystal clear law approving the practice of confession being signed by members of the same firm representing the creditor. Their motion to disqualify is patently harassing in nature, being filed only after the lender and its counsel (i) obtained a judgment, (ii) successfully cited numerous bank accounts, (iii) successfully had a receiver appointed in a related mortgage foreclosure case, and (iv) objected to a co-debtor's efforts to use cash collateral in a related bankruptcy case. In other words, the Bangalans are concerned that the Lender's counsel is too effective and too aggressive both seen as problems for a couple of debtors who are trying to avoid repaying their $800,000 plus debt.

For one hundred seventeen years Illinois courts have approved of attorneys executing confessions of judgment while in the same firm as the creditor's attorney. For example, in Blanck v. Medley, 63 Ill. App. 211 (4th Dist. 1985), the appellate court stated,

> The warrant of attorney expressly authorized "any attorney" of any court of record to appear for the maker of the notes and confess judgment. The fact that he was in partnership with Judge Monroe in the practice of law did not prevent him from exercising the power expressly conferred by the warrant in his individual capacity. As is well known, the signing of the cognovits by an attorney is largely a matter of form, both the declaration and cognovits being usually prepared by the Plaintiff's attorney. The cognovits must be authorized by the warrant of attorney in order to sustain the judgment; so that, practically, it is not so material what attorney signs as it is material the confession is within the scope of the power.

Id. at 213 (emphasis in original).

The decision in Blanck has been accepted by the First District. For example, in Gecht v. Suson, the appellate court stated, Defendants' contention that the confession of judgment by an attorney of

5

the same firm as Plaintiffs' counsel invalidates the judgment is without merit." 3 Ill. App. 3d 183, 188 (1st Dist. 1971) (emphasis added). Likewise, the Blanck decision was cited with approval by the federal district court in Citibank v. Bearcat Tire, A.G., where the court labeled such an argument as "frivolous." The court stated, "First, the Note (at 2) specifically allows Citibank to designate 'any attorney' to confess judgment, and Illinois courts have squarely held confession of judgment by an attorney of the same firm as Plaintiff's counsel does not invalidate the judgment." 550 F. Sup. 148, 150-151 (N.D. Ill. 1982).

The foregoing, longstanding authority, establishes it is entirely proper for attorneys in the same firm to sign confessions under warrant from a debtor while representing the creditor, and furthermore that such conduct has absolutely no impact on the validity of the confessed judgment. Recognizing that a direct attack on the confessions would be futile, the Bangalans attempt to re-cast the issue as one of professional conduct, but that argument is equally meritless. In bringing such an argument, the Bangalans have done nothing more than cast negative aspersions on the integrity of the Lender's counsel, with the sole intent of harassing the Lender and engaging in frowned upon litigation tactics.

There is no "conflict". The entire premises of the Bangalans' argument contains a fundamental and fatal flaw. Specifically, there is no 'conflict of interest" because attorney Mathless, a member of the Lender's law firm, did exactly what the Bangalans instructed and authorized him to do. The confession of judgment at issue states:

> Guarantor hereby irrevocably authorizes and empowers any attorney at law to appear in any court of record and to confess judgment against the guarantor for the unpaid amount of this guaranty as evidenced by an affidavit signed by an officer by Lender setting forth the amount then due.

True and correct of the Commercial Guaranties executed by the Bangalans are attached hereto as Group Exhibit 1.

Nowhere in their motion to disqualify do the Bangalans allege attorney Mathless stepped outside of the foregoing warrant, or that he did anything whatsoever against the interests of the Bangalans. To the contrary, everything in the motion to disqualify suggest attorney Mathless did exactly

6

what the Bangalans instructed and authorized him to do in their warrant. There is simply no "conflict of interest," nor is one actually alleged.

Despite having no facts setting forth what "conflict of interest" could possibly exist, the Bangalans claims that there is a "concurrent conflict of interest" inasmuch as attorney Mathless is a member of the Lender's law firm. The Bangalans' argument is based on Rule 1.7 of the Illinois Rules of Professional conduct, which states in pertinent part:

> (a) Except as provided, in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
> (1) The representation of one client will be directly adverse to another client; or
> (2) There is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

Ill. R.P.C. 1.7 (2010).

The Bangalans admit that they signed the guarantees containing the confession language and attorney warrant, which was presumably in their best interests, because they wanted the Lender to approve the loan. There is no allegation that attorney Mathless represented the Bangalans in connection with execution of the guarantees. Therefore, when attorney Mathless signed the confession affidavits, he was not acting against the interest of the Bangalans. To the contrary, by following their instructions, attorney Mathless was furthering the interests of the Bangalans when they signed the warrants, and nothing more. Therefore, Rule 17 of the Rules of Professional conduct has absolutely no application here.

As there was no conflict when attorney Mathless signed the confession, the provisions in Rule 1.7(b) are also not applicable, as those provisions apply only where there is a conflict in the first place.

Just as there was no "conflict" when the confession was executed, there is nothing to impute a conflict on the other members of the Lender's law firm. Rule 1.10 provides that:

7

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9...

(c) A disqualification prescribed by this Rule may be waived by the affected client under the conditions stated in Rule 1.7.

Here, there was no conflict to begin with when attorney Mathless followed the warrant of the Bangalans and signed the confession affidavits. Therefore, there is no conflict between attorney Mathless and the Bangalans that could be imputed to the rest of the Lender's law firm.

The confession of judgment language in the guarantees also states, "guarantor hereby waives and releases any and all claims or causes of action which guarantor might have against any attorney acting under the terms of authority which guarantor has granted herein arising out of or connected with the confession of judgment hereunder." Group Exhibit 1, p. 3. The Bangalans are barred from bringing their motion to disqualify based on the foregoing release and waiver.

There is no statutory right to bring a motion to disqualify, either in the Rules of Professional conduct or otherwise. Nevertheless, for the sake of argument, the lender will accept arguendo, the Bangalans' motion to disqualify based on the foregoing release and waiver.

There is no statutory right to bring a motion to disqualify either in the rules of professional conduct or otherwise. Nevertheless, for the sake of argument, the Lender will accept, arguendo, that the Bangalans' motion to disqualify is somehow proper under the rules of professional conduct, rules of civil procedure or supreme court rules. Nevertheless, "it is fundamentally accepted that parties may contract away rights, even of constitutional dimension, as well as statutory rights." Gaylor v. Village of Ringwood, 363 Ill. App. 3d 543, 549 (2nd Dist. 2006). Moreover, Illinois courts have expressly held that individuals can waive their right to bring motions to disqualify, even where actual conflicts exists. See, e.g., In re Estate of Klehm, 363 Ill. App. 3d 373, 384 (1st Dist. 2006). Given their express waiver of any claims arising from the confession, the Bangalans have no right to bring this motion to disqualify.

8

The motion to disqualify should be denied because (i) there was never any "conflict," and (ii) the Bangalans waived the right to bring such a motion in the first place. Notwithstanding this, the lender and its counsel are compelled to clarify for the record that there is no present conflict of interest which would prohibit the lender's law firm, or any of its individual attorneys, from continuing to represent the lender.

Assuming, arguendo, that attorney Mathless "represented" the Bangalans when he signed the confession affidavits, there are still no allegations that he ever met the Bangalans, ever spoke to the Bangalans, ever received confidential communications or information from the Bangalans, or ever had contact with the Bangalans whatsoever. In determining whether to disqualify an attorney based on a prior relationship with a now-adverse party, "The primary concern under eth substantial relationship test is whether 'confidential information that might have been gained in the first representation may be used to the detriment of the former client in the subsequent action." In re Klehm, 363 Ill. App. 3d at 381. ("Even if the Klehm movants had not waived their right to seek disqualification . . . the attorneys still should not have been disqualified . . . because the records show that the movants failed to meet their burden of establishing a 'substantial relationship between the attorneys' earlier representation of the movants and their subsequent representation [of the opponent]."

Here, absolutely no information was ever given from the Bangalans to attorney Mathless nor any other members of the Lender's law firm. To the contrary, the Bangalans signed a warrant years earlier, which they gave o the Lender (destroying any confidentiality), and attorney Mathless, based solely on that non-confidential communication, followed the Bangalans' instructions. The Bangalans, having failed to show any confidence that attorney Mathless could possibly use against them, have failed to establish any basis to disqualify the lender's law firm.

Movants reply as follows: This Court should grant the Bangalans motion and disqualify Ginsberg, which asks a simple question: Did 2010 RPC 1.7 change Illinois law so a Plaintiff's a lawyer can

no longer sign a confession of judgment on behalf of a defendant in the same case? Instead of answering this question, Plaintiff dodges it by focusing on pre-2010 case law. Plaintiff's failure to answer this point clearly suggest that it has no meritorious response.

Section I of Plaintiff's response which says Court disfavor purportedly "harassing" motions to disqualify opposing counsel dodges the substance of the Bangalans motion. Norman and Marilyn obviously have a meritorious argument based upon the plain language of 2010 RPC 1.7 and its associated comments. Without identifying any post 2010 case law supporting its position, the Plaintiff cannot deny the good-faith nature of the Bangalans' motion.

Plaintiff's next point calling the motion patently harassing in nature because Norman and Marilyn filed it after the Plaintiff obtained its judgment and successfully froze numerous bank accounts lacks merit. The sequence of events does not suggest any delay by the Bangalans. This case involves a confession judgment, of which the Bangalans obviously had no prior notice or opportunity to be heard, leaving them without knowledge of the judgment until after the Plaintiff's citations had already frozen their bank accounts. The Bangalans filed their motion to disqualify on April 12, 2013 about a month later.

Section II of the Plaintiff's response fails because its also dodges the simple question posed above. Instead of addressing the effect of the ethical rule, the Plaintiff cites pre-2010 law, including an 1895 fourth district case, a 1971 first district case (Gecht v. Suson, 3 Ill. App. 3d 183, 188 (1st Dist. 1971)), and a 1982 U.S. District Court case (Citibank N.A. v. Bearcat Tire, A.G., 550 F. Supp. 148, 150-51 (N.D. Ill. 1982)). The events at issue in each case cited by Plaintiff predate 2010 RPC 1.7, Illinois' original RPC 1.7 (adopted in 1990), as well as DR-105 of the even older Code of Professional Responsibility.

The Bangalans do not dispute that pre-1982 Illinois case law allowed a Plaintiff's lawyer to confess judgment on behalf of Defendants. Although Gecht and Citibank, N.A. may have stated the law

correctly in decades past, their reasoning no longer applies. As of 2013, Illinois law now bars lawyers from representing both sides before the same tribunal in any litigation.

Section III of Plaintiff's response makes illogical arguments about the supposed inapplicability of 2010 RPC 1.7. This section discusses each argument, in turn.

Mathless execution of the confession of judgment on behalf of Norman and Marilyn clearly acted against Norman's and Marilyn's interests.

The Plaintiff's claim that the language of the confessions of judgment eliminates any conflict (Response at 3), that "[t]here is simply no conflict of interest,' nor is one actually alleged," or that Mathless never" . . . did anything whatsoever against the interest of the Bangalans" (Id. at 4), represent the worst kind of sophistry, as does the following passage:

> . . . Therefore, when attorney Mathless signed the confession affidavits, he was not acting against the interests of the Bangalans. To the contrary, by following their instructions, attorney Mathless was furthering the interests of the Bangalans when they signed the warrants, and nothing more. . .

(Id. at 4). These arguments defy common sense or any polite response, and are obviously untrue. Norman and Marilyn invite this Court to ask the Plaintiff's counsel exactly how Mathless' execution of the confessions of judgment "furthered" their interests or helped them in any way. The entry of that judgment exposed their assets to execution and impaired their credit.

An attorney owes unswerving fidelity to the client, and the attorney must advocate and safeguard the client's economic interest. Confessing a judgment against one's own client betrays that duty of fidelity, and contradicts the lawyer's fundamental role as the client's zealous advocate. Put more bluntly, a confession of judgment clause does not magically create a "legal holiday" from the ordinary application of ethical rules for any attorney whose paying commercial clients pays him enough to represent the debtor in the same lawsuit.

The allegations relating to the conflict of interest appear in paragraph 3-4 of the Bangalans' motion, which avers Mathless' execution of confessions of judgment on their behalf, despite his

association with Ginsberg. Simply stated, Mathless' action put Ginsberg on opposing sides of the same lawsuit pending before this Court, thereby creating exactly the type of non-consentable concurrent conflict of interest that 2010 RPC 1.7(a)(1) prohibits.

Section III.B of Plaintiff's response fails because the plain language of 2010 RPC 1.10 contradicts its argument. 2010 RPC 1.10(a) prevent all lawyers in a firm from representing a client where 2010 RPC 1.7 would bar any of them from representing that client. As discussed supra, 2010 RPC 1.7(a) prohibits a lawyer from representing opposing parties in the same lawsuit. Therefore, 2010 RPC 1.10(a) prohibits all lawyers in the same firm from doing so. Ginsberg violated these rules when its attorney (Thomas Lombardo), signed the complaint on behalf of the Plaintiff in this lawsuit, while its other attorney (Mathless) signed confessions of judgment on behalf of the defendants in this same lawsuit.

Section IV of Plaintiff's response says the Bangalans waived the conflict of interest by signing guaranties with a confession of judgment clause containing language of waiver. Not so. That argument fails as a matter of law because the 2010 RPCs expressly forbid the Bangalans from "consenting" to Ginsberg's unethical representation of opposing sides in the same case – irrespective of any contractual agreement.

2010 RPC 1.10(c) permits waiver of disqualification by the affected client only "… under the conditions stated in rule 1.7." 2010 RPC 1.7(b) governs conflict waivers, and reads as follows in relevant part:

> Notwithstanding the existence of concurrent conflict of interest under paragraph (a), lawyer may represent a client if:
>
> (3) The representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; …

The plain language of 2010 RPC 1.7(b)(3) disqualifies Ginsberg whose attorneys appeared on both sides of the same litigation pending before the same tribunal. The comments to 2010 RPC 1.7 further clarify the rules governing representations where a conflict exists by introducing the concept of

the "nonconsentable conflict," to which the client cannot agree as a matter of law. Paragraphs 8 and 9 of the motion discuss the relevant portions of the comment section addressing "nonconsentable conflicts."

Notwithstanding any contractual "waiver" clauses embedded in their guaranties, Norman and Marilyn could not legally consent to Ginsberg's ethical breach, and the law as described in 2010 RPC 1.7(b)(3) therefore negates the effect of those clauses.

A second, equally compelling impediment prevented Norman and Marilyn from waiving Ginsberg's conflict of interest; the Bangalans did not receive full disclosure of that conflict before consenting. The language of the "confession-of-judgment" clauses in their guaranties does not identify any particular lawyer, says absolutely nothing about the Plaintiff using its own lawyer to confess judgment on behalf of the Bangalans, and does not disclose the implications of common representation. Comments 18 and 22 to 2010 RPC 1.7 discuss the issue, and reads as follows, in relevant part:

> [18] informed consent requires that each affected client be aware of the relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects on the interest of that client ... The information required depends on the nature of the conflict and the nature of the risks involved. When representing of multiple clients in a single matter is undertaken, the information must include the implications of the common representation, including possible effects on loyalty, confidentiality and the attorney client privilege and the advantages and risks involved. See Comments (30) and [31] (effect of common representation on confidentiality).
>
> [22] Whether a lawyer may properly request a client to waive conflicts that might arise in the future is subject to the test of paragraph (b). The effectiveness of such waivers is generally determined by the extent to which the client reasonably understands the material risks that the waiver entails. The more comprehensive the explanation of the types of future representations that might arise and the actual and reasonably foreseeable adverse consequences of those representations, the greater the likelihood that the client will have the requisite understanding. If the consent is general and open ended, then the consent ordinarily will be ineffective, because it is not reasonably likely that the client will have understood the material risks involved. In any case, advance cannot be effective if the circumstances that materialize in the future are such as would make the conflict nonconsentable under paragraph (b).

13

(Emphasis added). The lack of adequate disclosure prevented any legally viable waiver by the Bangalans.

Last (and least), Section V of Plaintiff's response suggests this Court cannot disqualify Ginsberg because Mathless supposedly never had a "substantial relationship" with Norman and Marilyn. In "support", the Plaintiff now says Mathless never "really" represented the Bangalans because he supposedly never met them, spoke to them, received confidential communications or information from them, or had any contract with them. This argument defies all logic

Mathless either represented the Bangalans or he did not, and Plaintiff cannot use chamelonic litigation tactics to play both sides of the fence. "Truth is not a weather vane. It does not veer when the winds of self-interest change. It remains constant." Department of Transp., State of Illinois Coe, 112 Ill. App. 3d 506, 507-08 (4th Dist. 1983). If Mathless never "really represented Norman and Marilyn, then his confessions of judgment on their behalf had no legal effect, and the statements identifying Matheless as their attorney were simply false.

Plaintiff's reliance upon Estate of Klehm, 363 Ill. App. 3d 373 (1st Dist. 2006) (a will contest appeal) is misplaced because that case involved two very different issues. First, Klehm turned upon issues of waiver, the Appellate Court held the heirs seeking disqualification waived their right to do so by waiting approximately four years before moving to disqualify the executor's counsel. Id. at 384. Second, the purported conflict in Klehm occurred because of the attorneys' prior representation of the heirs some twenty years earlier. Id. at 384.

This case is nothing like Klehm. The facts at bar do not support waiver because Norman and Marilyn acted promptly; they moved to disqualify Ginsberg about a month after learning of the confession judgment against them, unlike the Klehm heirs, who waited four years before taking action. Moreover, and unlike Klehm, this case involves a concurrent conflict of interest because Ginsberg lawyers appeared for opposing parties within the same case at the same time.

14

Where for the foregoing reasons, as well as those stated previously, the Bangalans ask this Court for the relief requested in their motion for disqualification.

The Court agrees with the Bangalans. The motion to disqualify is granted.

ENTER: _____
JUDGE Alexander P. White

ENTERED
JUDGE ALEXANDER WHITE - 0241

AUG 1 4 2013

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK