UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BAY GROUP HEALTH CARE, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GINSBERG JACOBS, LLC, et al.,<br><br>Defendants. | No. 15 C 0986<br><br>Magistrate Judge Mary M. Rowland |

# MEMORANDUM OPINION AND ORDER

Plaintiffs Bay Group Health Care, LLC, Norman Bangalan, and Marilyn Bangalan filed a single-count complaint for legal malpractice against Defendants. Plaintiffs allege that Defendants Thomas Lombardo, Tracy Steindel, Gabriel Mathless, and the law firm of Ginsberg Jacobs, engaged in an unauthorized conflict of interest by concurrently representing Bay Group and Bay Group's adversary, Bridgeview Bank (Bank), in the same lawsuit. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

On May 4, 2015, Defendants filed a combined Motion to Dismiss and for Summary Judgment. For the reasons set forth below, the Motion is granted in part and denied in part.

# I. FACTUAL ALLEGATIONS[1]

In March 2011, Open Arms Health Care, Inc. took out a loan from the Bank. (¶ 13). Open Arms issued a promissory note to the Bank evidencing its obligations pursuant to the loan agreement (Note), and each Plaintiff signed a commercial guarantee guaranteeing payment on the Note. (¶¶ 13–15). Under the terms of the guarantees, Plaintiffs each agreed that the Bank could confess judgment on their behalf in event of a default on the Note. (Compl. Exs. B–D).

Open Arms defaulted on the Note, and in February 2013, the Bank sought to recover on the guarantees. (¶ 16). The Bank, represented by its attorneys, Lombardo, Steindel and Mathless, and Ginsberg Jacobs, filed an action for confession of judgment against each Plaintiff. (¶ 16). Mathless waived service of the pleading and signed documents confessing judgment on behalf of Plaintiffs. (¶ 19 & Compl. Ex. E). Based on these confessions, on February 28, 2013, the Circuit Court of Cook County entered a judgment in favor of the Bank and against Plaintiffs. (¶ 20).

Plaintiffs later challenged the validity of the confessed judgment and moved to disqualify Ginsberg Jacobs, which the Circuit Court granted in August 2013. (¶ 22 & Compl. ¶¶ 31–32). In November 2013, the Circuit Court vacated the judgment, finding that the definition of "indebtedness" in the guarantees was vague and not capable of supporting a confession judgment. (¶¶ 22–23). The Bank retained new

---

[1] Unless otherwise indicated, all factual citations are to Defendants' Statement of Undisputed Material Facts. (Dkt. 24).

counsel and entered into a settlement agreement with Plaintiffs (Release).[2] (¶ 24 & Compl. ¶ 34). The settlement agreement included a mutual release whereby Bay Group agreed to release any and all claims against the Bank. (¶¶ 25–30).

## II. DISCUSSION

### A. Motion to Dismiss

In their motion to dismiss, Defendants Lombardo and Steindel move for dismissal because Plaintiffs make no allegations that they have ever been in an attorney-client relationship with either of them. (Dkt. 25 at 2).

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint, not to decide its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). A Rule 12(b)(6) motion to dismiss must be considered in light of the liberal pleading standard of Rule 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (internal citations and alterations omitted). Determination of the sufficiency of a claim must be made "on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis omitted).

---

[2] The Release is attached to Dkt. 24 as Exhibit 1.

The parties agree that Illinois law applies to this lawsuit.[3] (Dkt. 25 at 6; Dkt. 33 at 8). To prove legal malpractice, an Illinois plaintiff must establish: "(1) the existence of an attorney-client relationship ('duty'); (2) a negligent act or omission on the part of the attorney ('breach'); (3) causation; and (4) damages." *Arena Football League, Inc. v. Roemer*, 9 F. Supp. 2d 889, 896–97 (N.D. Ill. 1998) (citing *Serafin v. Seith*, 672 N.E.2d 302, 309 (Ill. App. Ct. 1996)). Thus, before an attorney can be held liable for legal malpractice, there must be a duty owed that arises from a contractual relationship established through a valid offer and acceptance. Ira N. Helfgot & Maureen A. McGuire, *Duties to the Client: Defining the Standards of Care* § 2.2 (IICLE 2012). "An express contractual attorney-client relationship need not have formed, but the individual must have consulted the lawyer with the intention of seeking legal advice." *Fematt v. Finnigan*, No. 11 CV 1530, 2012 WL 3308759, at *2 (N.D. Ill. Aug. 13, 2012). An implied attorney-client relationship can be created without an express contract, but "[t]he professional relationship . . . hinges upon the *client's belief* that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice." *Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1319 (7th Cir. 1978) (citation omitted) (emphasis added); *accord Mindy's Rest., Inc. v. Watters*, No. 08 C 5448, 2009 WL 500634, at *2 (N.D. Ill. Feb. 27, 2009). The critical factor, therefore, is what the *client* reasonably believed,

---

[3] The Court will not challenge the parties' choice of law. *Wood v. Mid-Valley, Inc.*, 942 F.2d 426, 427 (7th Cir. 1991) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies."); *accord Markin v. Chebemma Inc.*, 526 F. Supp. 2d 890, 893 (N.D. Ill. 2007).

not what the attorney may have thought. *Westinghouse Elec.*, 580 F.2d at 1319 n.14 (citation omitted).[4]

The Complaint alleges that Mathless executed and caused to be filed confessions of judgment on behalf of each Plaintiff. (Compl. ¶ 19). In each of these confessions, Mathless represented that he was the Plaintiff's attorney. (Compl. ¶ 19 & Ex. E). The Complaint also alleges that Mathless concealed a conflict of interest from the state court by failing to indicate on the confessions of judgment that he was associated with Ginsberg Jacobs. (*Id.*). The Complaint, however, contains no allegations that Plaintiffs entered into an attorney-client relationship—either express or implied—with either Lombardo or Steindel. Indeed, there are no allegations that any Plaintiff believed they were consulting Lombardo or Steindel for the purpose of seeking legal advice. Instead, the Complaint repeatedly states that none of the Plaintiffs authorized any of the Defendants to act on Plaintiffs' behalf. (Compl. ¶¶ 1, 20, 40).

Plaintiffs contend that "Lombardo and Steindel entered into an attorney-client relationship with Bay Group as Mathless's supervisory attorneys because they directed his actions and collaborated in the providing of legal advice and services to Bay Group." (Dkt. 33 at 6). Plaintiffs further assert that Steindel and Lombardo, who according to Plaintiffs' brief are more experienced than Mathless, provided le-

---

[4] "The general rule in Illinois is that an attorney owes a duty of care only to his client and not to third parties." *Kopka v. Kamensky & Rubenstein*, 821 N.E.2d 719, 723 (Ill. App. Ct. 2004). A narrow exception to this privity requirement exists, however, where an attorney was hired specifically to benefit the third party. *Id*. Here, Plaintiffs do not contend that they were the intended beneficiaries of the legal services Defendants provided to the Bank.

gal services to Bay Group when they instructed Mathless to sign the confessions of judgment. (*Id.*) But, as discussed above, what *Defendants* may have thought about their relationship with Bay Group is beside the point. There is simply no allegation in the Complaint that any of the Plaintiffs consulted with Steindel or Lombardo with the manifest intention of seeking professional legal advice. *Westinghouse Elec.*, 580 F.2d at 1319; *Mindy's Rest.*, 2009 WL 500634, at *4.

Alternatively, Plaintiffs assert that Defendants' "representation of Bay Group and [the Bank] in the same matter created a co-client relationship between the co-clients and each defendant." (Dkt. 33 at 6–7). Under the joint client or co-client doctrine, "when two or more persons each having an interest in some problem, or situation, *jointly consult* an attorney, they necessarily agree to share all information related to the matter of common interest with each other." *McCullough v. Fraternal Order of Police, Chicago Lodge 7*, 304 F.R.D. 232, 238 (N.D. Ill. 2014) (emphasis added). In these situations, the co-clients' "*otherwise privileged communications* with the attorney—i.e. those that qualify as privileged under the attorney/client privilege—though known to each other, will be privileged as to outsiders, but not *inter se*. *Id*. (emphasis in original). But here, the issue is not whether communications known to both Plaintiffs and the Bank were privileged. Rather, the issue is whether an attorney-client relationship was created between any of the Plaintiffs and Steindel or Lombardo. And, as discussed above, there are no allegations in the Complaint that Plaintiffs and the Bank jointly consulted Defendants with the inten-

tion of seeking legal advice. *See McCullough*, 304 F.R.D. at 238; *Westinghouse Elec.*, 580 F.2d at 1319.

Defendants Lombardo and Steindel are dismissed without prejudice with leave to amend. Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."); *see Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana,* 786 F.3d 510, 519 (7th Cir. 2015) ("[A] plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed.").

**B. Motion for Summary Judgment**

Summary judgment is proper only if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court views the evidence in the light most favorable to Plaintiffs, the nonmoving party, and draws all reasonable inferences in their favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). To avoid summary judgment, Plaintiffs, who bear the burden of proof, cannot rely on the pleadings alone, but must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (citation omitted); *see Celotex*, 477 U.S. at 324 (Rule 56 "requires the nonmoving party to go

beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.") (citation omitted).

Defendants contend that they are entitled to summary judgment because Plaintiffs released any and all claims against them.[5] (Dkt. 25 at 9–11). Defendants argue that "[b]ased on the clear, unambiguous and unequivocal language of the Release [contained in the settlement agreement entered between the parties to the state court action], Plaintiffs are barred from any claims, including those raised in the instant litigation, against any Defendant, each of whom was, according to the allegations of Plaintiff's own Complaint, a Bank attorney." (*Id.* at 9). Under Illinois law, "a release is a contract in which one party abandons claims against another." *Brieger v. Tellabs, Inc.*, 473 F. Supp. 2d 878, 885 (N.D. Ill. 2007). A release is interpreted by the principles of contract law. *Id.* (citing *Farm Credit Bank of St. Louis v. Whitlock*, 581 N.E.2d 664, 667 (Ill. 1991); *Thornwood v. Jenner & Block*, 799 N.E.2d 756, 762 (Ill. App. Ct. 2003)). The parties' intentions must be determined from the document itself; if no ambiguities exist, contract construction is a matter of law. *Farm Credit Bank*, 581 N.E.2d at 667; *accord Brieger*, 473 F. Supp. 2d at 885.

A contract is ambiguous if its terms are reasonably capable of multiple interpretations. *UIDC Mgmt., Inc. v. Sears Roebuck & Co.*, 490 N.E.2d 164, 166 (Ill. App. Ct. 1986) "However, the mere fact that the parties do not agree upon the meaning of the

---

[5] Because release is an affirmative defense, it must be raised in a motion for summary judgment, rather than in a motion to dismiss. *Deckard v. General Motors Corp.*, 307 F.3d 556, 560 (7th Cir. 2002).

contract terms does not create an ambiguity." *Id.* Instead, ambiguity is found only if due to the indefiniteness of language, "the contract language is reasonably or fairly susceptible of more than one construction." *Interim Health Care of N. Illinois, Inc. v. Interim Health Care, Inc.*, 225 F.3d 876, 879 (7th Cir. 2000). Whether a contract is ambiguous is a question of law. *UIDC Mgmt.*, 490 N.E.2d at 166. To determine the parties' intent, the contract must be considered as a whole. *Util. Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 687 (7th Cir. 2004); *see Interim Health Care*, 225 F.3d at 879 ("Illinois courts endeavor to construe contracts as a whole, giving meaning to each provision."). "In examining the contract as a whole, the Court must give effect, to the extent possible, to all contractual provisions, so as not to render any terms unnecessary or superfluous." *Markin v. Chebemma Inc.*, 526 F. Supp. 2d 890, 894 (N.D. Ill. 2007).

A contract can be extrinsically or intrinsically ambiguous. "'Latent' or 'extrinsic' ambiguity arises when the terms are clear taken by themselves, but the surrounding circumstances create inconsistent interpretations." *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998). "Manifest" or "intrinsic" ambiguity "arises when the express language of the contract itself is fairly susceptible to more than one reasonable reading." *Id.* To determine whether a contract term is intrinsically ambiguous, a court reviews the entire contract to determine if the "provision that seems ambiguous might be disambiguated elsewhere in the agreement." *Barnett v. Ameren Corp.*, 436 F.3d 830, 833 (7th Cir. 2006) (citation omitted). In evaluating intrinsic ambiguity, a court must give words their ordinary and natural meaning and

read contractual provisions in a way that makes them internally consistent. *Markin*, 527 F. Supp. 2d at 905; *Interim Health Care*, 225 F.3d at 879–80.

The Release states in relevant part:

> [Plaintiffs] herby Release any and all Claims against [the Bank], including [the Bank's] . . . legal representatives, agents, attorneys . . . , other than to enforce the terms of this Agreement.

(Release § 5(C)). It is undisputed that at the time the Release was drafted and executed, Defendants were no longer the Bank's attorneys. (Dkt. 24 at ¶ 24; Compl. ¶ 34). Nevertheless, Defendants contend that the Release applies to the Bank's current, past, and future attorneys. (Dkt. 35 at 11–14). However, in its "past, present and future" clause, the Release explicitly avoids including past or future attorneys. Instead, the Release extends to the benefit of *only* the Parties'

> past, present and future officers, directors, shareholders, members, managers, owners, principals, employees, *agents*, partners, successors, assigns, subsidiaries, affiliates, parent companies, related companies, administrators, beneficiaries, receivers, trustees, *legal representatives*, and any other related persons or entities whose claims may arise by or through them.

(Release § 5(D)(ii)) (emphasis added).

The Court must interpret the Release as a whole and read its terms in a way that makes them internally consistent. *Util. Audit*, 383 F.3d at 687; *Markin*, 527 F. Supp. 2d at 905; *see Barnett*, 436 F.3d at 833 (reviewing the entire contract and determining that a provision that seemed ambiguous could be ascertained elsewhere in the agreement). The Release, on its face, does not inure to the benefit of past attorneys, including Defendants.

Defendants argue that the "past, present and future" clause is not dispositive because by excluding "attorneys," even current attorneys would not be released, which is clearly not what the parties intended. (Dkt. 35 at 13). But this interpretation would make either § 5(C) or § 5(D)(ii) superfluous or meaningless, which the Court must avoid. *Markin*, 526 F. Supp. 2d at 894 ("In examining the contract as a whole, the Court must give effect, to the extent possible, to all contractual provisions, so as not to render any terms unnecessary or superfluous."). Instead, the reasonable interpretation is that the "past, present and future" clause extends the benefit of the Release to specific individuals who were not included in the Release, like officers and directors. (*Compare* Release § 5(C) *with* § 5(D)(ii)). Further, while the Release includes shareholders and partners, for example (Release § 5(C)), the "past, present and future" clause extends the release to *past and future* shareholders and partners (*id.* § 5(D)(ii)).

Defendants next contend that the Release applies to them because the "past, present and future" clause includes past "agents" and "legal representatives." (Dkt. 35 at 13; *see* Release § 5(D)(ii)). But the plain meaning of "legal representative" is a legal heir, executor, or administrator. *Black's Law Dictionary* 1328 (8th ed. 2004); *see Gruenewald v. Neu*, 74 N.E. 101, 104 (Ill. 1905) ("Undoubtedly the primary and ordinary meaning of the term 'legal representatives' is executors and administrators."); *Murphy v. Peterson*, 473 N.E.2d 480, 483 (Ill. App. Ct. 1984) ("the general rule that the term 'legal representatives' must be understood in its ordinary meaning, namely, administrators or executors"). And there is nothing in the Release to

indicate that the parties intended "legal representative" to be broader than executors or administrators. *Berg v. Groomsmart, Inc.*, 2014 IL App (2d) 130686-U, ¶ 16, 2014 WL 1387528, at *4 (Ill. App. Ct. April 7, 2014) (while "legal representative" can be broader than executors or administrators, there must be evidence within the contract to broaden its standard meaning).

In any event, because the parties explicitly included "legal representatives, agents [and] attorneys" within the provision describing the Release (Release § 5(C)), but only extended the Release to include past "agents . . . [and] legal representatives" (*id.* § 5(D)(ii)), the only reasonable interpretation is that the parties did not intend to Release past attorneys, including Defendants. Thus, the Court finds, as a matter of law, that the Release did not waive all claims against Defendants or release them from potential liability in this lawsuit. *See Bourke*, 159 F.3d at 1037 ("If, however, one interpretation is reasonable and the other is not, there is no ambiguity to resolve by use of canons of construction or parol evidence and there is nothing for a trier of fact to determine."); *Countryman v. Indus. Comm'n*, 686 N.E.2d 61, 64 (Ill. App. Ct. 1997) ("If, however, the contract is susceptible to only one meaning when considered in light of parol evidence and rules of construction, the court may interpret the contract for itself.").

The motion for summary judgment is denied.

### III. CONCLUSION

For the reasons stated above, Defendants' Combined Motion to Dismiss and for Summary Judgment [23] is **GRANTED IN PART AND DENIED IN PART**.

*Bay Group v. Ginsberg Jacobs*, No. 15 C 0986     Page 12 of 13

Thomas Lombardo and Tracy Steindel are dismissed without prejudice. Plaintiffs are given until September 18, 2015, to amend their complaint.

E N T E R:

Dated: September 2, 2015

MARY M. ROWLAND
United States Magistrate Judge