IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BAY GROUP HEALTH CARE, LLD, <br> NORMAN BANGALAN and <br> MARILYN BANGALAN, <br> <br> Plaintiffs, <br> <br> v. <br> <br> GINSBERG JACOBS, LLC, and <br> GABRIEL MATHLESS, <br> <br> Defendants. | Case No. 15-cv-986 |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF**
**THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants, GINSBERG JACOBS, LLC ("Ginsberg Jacobs") and GABRIEL MATHLESS ("Mathless"), by and through their attorneys, TRIBLER ORPETT & MEYER, P.C., submit this Memorandum in support of their motion for summary judgment in their favor and against the Plaintiffs, Bay Group Health Care, LLD, Norman Bangalan and Marilyn Bangalan (collectively, "Plaintiffs"), pursuant to FRCP 56:

**INTRODUCTION**

In May of 2011, each of the three Plaintiffs – Norman Bangalan, Marilyn Bangalan and Bay Group, LLC – executed commercial guarantees through which they guaranteed payment on a promissory note issued by Bridgeview Bank Group (the "Bank") to Open Arms Health Care, Inc. The commercial guarantees contained clear and unequivocal confession of judgment provisions whereby each of the three Plaintiffs expressly and irrevocably agreed that, in the event of a default by Bay Group, "any attorney-at-law" could appear in any court and confess judgment on behalf of each Plaintiff. Bay Group subsequently defaulted on the terms of the Note. Pursuant to the terms of the Guaranties, the Bank hired Ginsberg Jacobs to pursue a

1

judgment against the guarantors, the Plaintiffs. A Ginsberg Jacobs attorney filed suit on behalf of the Bank and, in accord with Plaintiffs' express and unequivocal instructions, Gabriel Mathless, then an associate attorney with Ginsberg Jacobs, signed the confessions of judgment on behalf of each Plaintiff.

Plaintiffs have filed a single-count complaint for legal malpractice against attorney Mathless and his former employer, the law firm of Ginsberg Jacobs. Plaintiffs claim that there existed an attorney-client relationship between Mathless/Ginsberg Jacobs, on the one hand, and Plaintiffs, on the other hand, by virtue of the fact that Mathless signed the confessions of judgment on their behalf. Thus, Plaintiffs claim, Mathless and Ginsberg Jacobs acted in a conflict of interest when they confessed judgment on behalf of Plaintiffs in underlying litigation in favor of another party represented by other Ginsberg Jacobs attorneys.

By asserting a legal malpractice claim against Mathless and Ginsberg Jacobs, Plaintiffs ignore Illinois' long-standing legislatively-approved use of confessions of judgments – in which the creditor hires a lawyer, like Mathless, to appear on behalf of the debtor and confess judgment. The legislatively-approved process of confessing judgment does not give rise to an attorney-client relationship between the debtor and the confessing attorney who represents a party adverse to the debtor. As such, Mathless and Ginsberg Jacobs owed no duty to Plaintiffs upon which a legal malpractice claim could be properly premised. For this reason, Mathless and Ginsberg Jacobs are entitled to summary judgment.

Mathless and Ginsberg Jacobs are entitled to summary judgment on a second, independent basis. Plaintiffs have filed the instant lawsuit despite having clearly and unequivocally released all claims and potential claims against both Defendants. The personal guaranties through which Plaintiffs authorized an attorney to confess judgment on their behalf

2

contain explicit waivers of liability relative to Mathless and Ginsberg Jacobs. For this reason, Mathless and Ginsberg Jacobs respectfully request that this Court enter summary judgment in their favor and against Plaintiffs.

## STATEMENT OF FACTS

In March of 2011, Open Arms Health Care, Inc. ("Open Arms") took out a loan in the amount of $818,000 from Bridgeview Bank Group (the "Bank"). (¶ 13.)[1] Open Arms issued a promissory note (the "Note") to the Bank evidencing its obligations pursuant to the loan agreement. (¶ 13.) All Plaintiffs – Norman and Marilyn Bangalan and Bay Group, LLC – signed Commercial Guaranties (collectively, the "Guaranties" or, singularly, the "Guaranty") guaranteeing payment on the Note. (¶¶ 14-15.) Under the terms of the Guaranties, each Plaintiff agreed that the Bank could confess judgment on their behalf in the event of a default on the Note. (¶¶ 14-15.)

The confession of judgment provision in each Guaranty reads as follows:

> CONFESSION OF JUDGMENT. Guarantor hereby irrevocably authorizes and empowers any attorney-at-law to appear in any court of record and to confess judgment against Guarantor for the unpaid amount of this Guaranty as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, attorneys' fees plus costs of suit, and to release all errors, and waive all rights of appeal. If a copy of this Guaranty, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Guarantor waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Guaranty have been paid in full. Guarantor hereby waives and releases any and all claims or causes of action which Guarantor might have against any attorney acting under the terms of

---

[1] Unless otherwise indicated, all factual citations are to the paragraphs contained within Defendants' Statement of Undisputed Material Facts, in the following format (¶ [paragraph of Defendants' Statement of Undisputed Material Facts].)

3

>authority which Guarantor has granted herein arising out of or connected with the confession of judgment hereunder.

(¶ 16.)

Open Arms defaulted on the Note and the Bank made a demand upon Open Arms to pay the outstanding amount. (¶ 17). Open Arms failed to make the payments required under the Note. (¶ 18.) As such, in February of 2013, the Bank sought to recover on the Guaranties. (¶ 19.) The Bank, represented by the law firm of Ginsberg Jacobs, filed suit against all plaintiffs. (¶ 20.) Mathless, as authorized under the terms of the Guaranties, waived service of the pleading upon the Plaintiffs herein. (¶¶ 16, 22.) Pursuant to the terms of the Guaranties, Mathless also signed documents confessing judgment on behalf of all Plaintiffs herein. (¶¶ 16, 22.) Based on the confessions, on February 28, 2013, the Circuit Court of Cook County, Illinois, entered a judgment in favor of the Bank and against the Plaintiffs herein in the amount of $823,018.18. (¶ 23.)

Plaintiffs later challenged the validity of the confessed judgment and prevailed. (¶ 22.) On or about November 5, 2013, the Circuit Court vacated the judgment on the basis that the guaranties contained a definition of "indebtedness" that could not support a judgment by confession. (¶ 24.) After re-opening the litigation regarding their liability as guarantors, Plaintiffs settled the Bank's claim. (¶ 25.)

Mathless signed the confessions as authorized by the loan documents. (¶ 16.) Plaintiffs did not have a relationship with Ginsberg Jacobs or Mathless, except to the extent that Ginsberg Jacobs and Mathless represented the lender adverse to Plaintiffs. Plaintiffs never sought an agreement for legal services with either Ginsberg Jacobs or Mathless. (¶ 26.) They never sought legal advice from either Ginsberg Jacobs or Mathless. (¶ 27.) They never received legal advice from either Ginsberg Jacobs or Mathless. (¶ 28.) They never divulged confidential information to

either Ginsberg Jacobs or Mathless or received confidential information from either Ginsberg Jacobs or Mathless. (¶ 29.) They never paid either Ginsberg Jacobs or Mathless for the provision of legal services. (¶ 30.) They have never had any direct communication with either Ginsberg Jacobs or Mathless. (¶ 31.) Plaintiffs have never relied upon any representation made by Ginsberg Jacobs or Mathless to the effect that either was legal counsel for any Plaintiff. (¶ 32).

On January 30, 2015, Plaintiffs filed suit against Ginsberg Jacobs, Mathless, and two additional Ginsberg Jacobs attorneys who have since been dismissed from this cause. (Docket Nos. 1 and 40.) Plaintiffs allege that there existed an attorney-client relationship between Mathless and Ginsberg Jacobs, on one hand, and Plaintiffs, on the other hand, by virtue of Mathless's having executed the confessions of judgment on Plaintiffs' behalf. (Docket No. 1, ¶¶ 39, 40.)

Mathless and Ginsberg Jacobs filed their Answer and Affirmative Defenses to Plaintiffs' Complaint on November 4, 2015. (Docket No. 43.) Among the Affirmative Defenses contained therein is the Fourth Affirmative Defense, wherein Mathless and Ginsberg Jacobs assert that Plaintiffs' claims are barred by the release contained in the Commercial Guaranties executed by each Plaintiff. (Docket No. 43, ¶¶ 20-21.)

**ARGUMENT**

I. **LEGAL STANDARDS.**

A. Summary Judgment Standard

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving part is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). To avoid summary judgment, "the opposing party must go beyond

the pleadings and 'set forth specific facts showing that there is a genuine issue for trial.'" *Shelton v. Wright*, 2013 WL 212910, *5 (N.D. Ill. 2013), citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Shelton*, 2013 WL 212910 at *5. Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*.

    B.  Summary Judgment Based on Release.

Release is an affirmative defense, Fed.R.Civ.P. 8(c), and the existence of a defense does not undercut the adequacy of the claim. *See Gomez v. Toledo,* 446 U.S. 635, 639–41, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Rather, an assertion that a claim is barred by release should be raised through summary judgment. *Deckard v. Gen. Motors Corp.*, 307 F.3d 556, 560 (7th Cir. 2002).

    C.  Illinois Common Law Applies.

When a federal court sits in diversity jurisdiction, state court precedent on issues of state law are binding. *RAR Incorporated v. Turner Diesel Ltd.*, 107 F.3d 1272, 1276 (7th Cit. 1997). Because this case arises from the diversity jurisdiction of a federal court sitting in Illinois, this Court should apply Illinois contract law to interpret the release. *See Strachan v. Nisbet,* 202 F.2d 216, 218 (7th Cir.1953); *Deckard v. Gen. Motors Corp.*, 307 F.3d 556, 560 (7th Cir. 2002).

**II.   DEFENDANTS CANNOT BE LIABLE TO PLAINTIFFS AS THERE EXISTED NO ATTORNEY-CLIENT RELATIONSHIP UPON WHICH A DUTY COULD BE PREMISED**

To prove a claim of legal malpractice, the plaintiff must plead and prove that an attorney-client relationship existed. *Tri-G, Inc. v. Burke, Bosselman & Weaver, 222 Ill. 2d 218, 225-26 (2006).*" Here, neither Mathless nor Ginsberg Jacobs has at any time been in an attorney-client

relationship with any Plaintiff. As such, there is no basis by which any Plaintiff could establish that Mathless or Ginsberg Jacobs owed the duties alleged in Plaintiffs' Complaint or any other duty of care sufficient upon which to establish Mathless's or Ginsberg Jacobs's liability for Plaintiffs' alleged damages.

Under Illinois law, in order to state a cause of action for negligence, a plaintiff must establish: (1) the existence of a duty of care on the part of the defendant to the plaintiff; (2) a breach of that duty; and (3) that the breach proximately caused the plaintiff's injuries. *Pelham v. Griesheimer*, 92 Ill.2d 13, 18 (1982); *Cunis v. Brennan*, 56 Ill.2d 372, 374 (1974); *Nowak v. Coghill*, 296 Ill.App.3d 886, 892 (2d Dist. 1998).

Whether a duty exists is a question of law to be answered by the trial court. *Nowak*, 296 Ill.App.3d at 892. The existence of a duty arises from the defendant and the plaintiff standing in such a relationship to one another that the law imposes upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff. *Schechter v. Blank*, 254 Ill.App.3d 560, 563 (1st Dist. 1993). As such, an attorney will only be liable in negligence to persons to whom he or she owes a duty. *Id.* at 563.

In 1879, the U.S. Supreme Court considered the question to whom an attorney owes a legal duty of care and concluded that attorneys owe duties only to their clients. *Savings Bank v. Ward*, 100 U.S. 195 (1879). Although the bright-line rule enunciated in *Savings Bank* has been somewhat eroded over time, the general rule holds fast. Generally, under Illinois law, an attorney owes a duty of care only to his client and not to third parties, in order "to protect the personal, highly confidential and fiduciary nature of the attorney-client relationship." *Pelham*, 92 Ill.2d at 19.

There is a single exception to the general rule. An attorney will owe a duty to a third party, non-client only when the attorney has been retained by his client specifically for the purpose of benefitting the third party. *Pelham*, 92 Ill.2d at 21; *Builders Bank v. Barry Finkel & Associates*, 339 Ill.App.3d 1, 8-9 (2003). As such, an attorney will only owe such a duty to the non-client where "the primary purpose and intent of the attorney-client relationship itself was to benefit or influence the third party." *Kopka v. Kamensky & Rubenstein*, 354 Ill.App.3d 930, 934-35 (1st Dist. 2005); See also, *Pelham*, 92 Ill.2d at 21.

The *Pelham* court explicitly rejected the proposition that an attorney owes a duty to a client's adversary:

> Where a client's interest is involved in a proceeding that is adversarial in nature, the existence of a duty of the attorney to another person would interfere with the undivided loyalty which the attorney owes his client and would detract from achieving the most advantageous position for his client. . . . In cases of an adversarial nature, in order to create a duty on the part of the attorney to one other than a client, there must be a clear indication that the representation by the attorney is intended to directly confer a benefit upon the third party. *Pelham*, 92 Ill.2d at 22-23.

Here, there is no allegation that Mathless's or Ginsberg Jacobs's representation of the Bank was for the specific, primary purpose of benefiting Plaintiffs – the Bank's adversaries. (See Plaintiffs' Complaint.) Indeed, as the *Pelham* opinion makes clear, the third party beneficiary doctrine leaves no room for argument that an attorney owes a duty to a client's adversary.

Rather, the sole premise for Plaintiffs' claim that Mathless and his employer, Ginsberg Jacobs, were Plaintiffs' attorneys is that Mathless signed confessions of judgment on behalf of each Plaintiff. The dispositive question, then, is whether an attorney-client relationship arises by the mere act of an attorney's execution of a confession of judgment pursuant to express authorization by an individual foreign to him. As is demonstrated below, the answer to this question is clearly "No."

The practice of obtaining judgment by confession dates back to early common law and was given statutory authority in Illinois over seventy years ago. See, *e.g.*, *French v. Willer*, 126 Ill. 611, 614 (1888) (discussing the history of judgments by confession at common law); and *Book v. Ewbank*, 311 Ill.App. 312, 320 (1941) (affirming judgment entered by confession under early version of statute). Today, the statutory authority for judgments by confession can be found in Section 2-1301 of the Code of Civil Procedure ("Section 2-1301."). 735 ILCS 5/2-1301. Section 2-1301(c) provides, in pertinent part, that "any person for a debt bona fide due may confess judgment by himself or herself or attorney duly authorized, without process." 735 ILCS 5/2-1301(c).

Section 2-1301, by its terms, permits a debtor to confess judgment on his own behalf or through an authorized attorney, without process. Section 2-1301 contains no requirement as to the identity of the attorney chosen to confess judgment on the debtor's behalf. Rather, by the terms of the confession of judgment clause, the debtor broadly authorizes "any attorney" to confess judgment on his behalf and leaves the selection of the attorney to the debtor. See, *e.g.*, *Long v. Coffman*, 230 Ill.App. 527, 529 (1923).

Illinois courts have approved of the very situation that occurred here, whereby the attorney confessing judgment is a member of the same firm as the creditor's attorney. *Gecht v. Suson*, 3 Ill.App.3d 183, 188 (1st Dist. 1971). In *Gecht*, the court rejected the defendant debtors' argument that the confessing attorney could not be a member of the same firm as the creditor's attorney. *Id.* (Citing to *Blanck v. Medley*, 63 Ill.App. 211 (1896), in stating, "Defendants' contention that the confession of judgment by an attorney of the same firm as plaintiffs' counsel invalidates the judgment is without merit.").

The *Blanck* decision stands for the same proposition articulated by the *Gecht* court – a confession of judgment is not invalidated merely because it was signed by a member of the same firm as the creditor's counsel – and provides further rationale for the proposition. In *Blanck*, the court affirmed a judgment by confession where the attorney signing the confession and the creditor's attorney were partners in the same law firm. *Blanck*, 63 Ill.App. at 214. The court rejected the debtor's challenge to such a practice, noting that the debtor's "warrant of attorney expressly authorized '*any* attorney' of any court of record to appear for the maker of the notes and confess judgment." *Id.* at 213. The court explained that no impropriety occurs under such circumstances because the signing of a confession is merely a formality:

> The fact that [the attorney signing the confession] was in partnership with [the creditor's attorney] in the practice of law did not prevent him from exercising the power expressly conferred by the warrant in his individual capacity. It was not necessary to the legality of the proceedings that the firm name should be signed either to the declaration or the cognovit. The name of either was sufficient. As is well known, the signing of the cognovit by an attorney is largely a matter of form, both the declaration and cognovit being usually prepared by the plaintiff's attorney. The cognovit must be authorized by the warrant of attorney in order to sustain the judgment; so that, practically, it is not so material what attorney signs as it is material the confession is within the scope of the power. *Id.*

The Illinois courts have expressly permitted an attorney to confess judgment in favor of a creditor represented by an attorney at the same firm and in doing so have rejected the conflict of interest argument. The explanation is simple: No conflict of interest exists because the confessing attorney has no attorney-client relationship with the debtor. As noted in *Blanck*¸ "the signing of the cognovit by an attorney is largely a matter of form;" it is not an act of legal representation and does not give rise to an attorney-client relationship.

Although the Illinois courts have not yet addressed the particular issue here, other jurisdictions have reached the conclusion that there exists no attorney-client relationship by virtue of an attorney signing a confession of judgment on behalf of a debtor.

For instance, in *Atl. Leasing & Fin., Inc. v. IPM Tech., Inc.*, 885 F.2d 188, 195 (4th Cir. 1989), the Fourth Circuit rejected a debtor's argument that a creditor's attorney should be disqualified from representing the creditor because another attorney at the same firm signed the confession on behalf of the debtor. The court pointed out that,

> Such an appearance [for the purpose of confessing judgment] is purely a ministerial act that, under the terms of the contract, may be performed by any member of the Bar irrespective of actual representational authority from IPM. No representational authority is presumed: the court clerk is charged with the responsibility to serve defendant with notice of the judgment. Accordingly, we perceive no conflict of interest or basis for disqualification. *Id.*

There is further support for this view. The Ohio courts have made very clear that, under the laws of that state – which, for all relevant purposes, mirror those in Illinois – a confessing attorney has no attorney-client relationship with the debtor and, as such, owes no duty to the debtor pursuant to which he could be held liable for legal malpractice. *DiBenedetto v. Miller*, 180 Ohio App.3d 69, 2008-Ohio-6506.

In *DiBenedetto*, the appellant-debtor appealed the dismissal of his legal malpractice claims against the attorney and law firm who both represented the creditor in seeking a judgment against the debtor and signed a confession of judgment on the debtor's behalf. *Id.* at ¶¶ 1, 4-5. The debtor claimed that the attorney and law firm breached a duty of care when they confessed judgment on his behalf and that, as a result, he lost the ability to pursue counterclaims against the creditor. *Id.* at ¶¶8-9. The trial court disagreed and dismissed the legal malpractice suit. Id. at ¶¶ 10, 19.

In affirming the dismissal, the appellate court held that "when an attorney confesses judgment against a debtor in favor of a creditor under a cognovit provision of a contract, that attorney represents only the creditor. An attorney confessing judgment against a debtor does not represent that debtor—the attorney is only acting as authorized under both contract and statute." Id. at ¶¶ 15, 19. For the foregoing reasons, the defendant attorney and law firm represented only the creditor and there existed no attorney-client relationship with the debtor, thus, the debtor possessed no cause of action for legal malpractice. *Id.* at ¶ 16.

The Supreme Court of Ohio's Board of Commissioners on Grievances and Discipline ("Board of Commissioners") reached the same conclusion in an advisory opinion. Supreme Court of Ohio Board of Commissioners on Grievances and Discipline, Opinion 2010-7 (Dec. 3, 2010) ("Opinion 2010-7"). In Opinion 2010-7, the Board of Commissioners answered in the negative the question whether a conflict of interest exists where an attorney signs a confession of judgment on behalf of a debtor at the behest of the creditor. The Board of Commissioners determined that there is no conflict of interest under Rule 1.7 of the Ohio Rules of Professional Conduct ("Ohio Rule 1.7") because there is no attorney-client relationship between the attorney and the debtor under which a conflict could arise. *Id.* at p. 3. The court stated, "In the case of a cognovit note, the confessing attorney's client is the creditor, not the debtor. Therefore, there can be no conflict of interest under [Rule] 1.7(c) because an attorney-client relationship does not exist between the confessing attorney and the debtor." *Id.*

Principles of statutory construction also strongly support the proposition that Mathless and Ginsberg Jacobs were not Plaintiffs' attorneys. A fundamental principle of statutory construction in Illinois tells us that no part of statutory text should be "rendered meaningless or superfluous." *People v. Lloyd*, 2013 IL 113510, ¶ 25. In other words, the language of the statute

must be given effect because that it how the legislature would have wanted it. The Illinois statute expressly authorizing judgments by confession – 735 ILCS 5/2-1402(c) – has effect *only* if there exists no attorney-client relationship between the confessing attorney and the debtor. This is the case regardless of whether the confessing attorney is a member of the same firm as the creditor's attorney.

A short illustration may be instructive: Confessions of judgment are effective only if the creditor is able to hire an attorney to confess judgment on behalf of the debtor. If the creditor lacked this ability, the objective of the statute – streamlining the process whereby judgments may be reached in the event of defaults – would be thwarted. However, if there existed an attorney-client relationship between the confessing attorney and the debtor, the attorney would necessarily be acting in a conflict of interest, as he would owe a duty to the creditor who is paying him but who has an interest diametrically opposite to that of the attorney's client, the debtor. The only logical conclusion: The legislature did not intend that the act of confessing judgment creates an attorney-client relationship where one did not otherwise exist.

In this case, it is clear that an attorney-client relationship did not exist. As is typical in confessions of judgment, there existed none of the earmarks of an attorney-client relationship. Plaintiffs never sought an agreement for legal services with either Ginsberg Jacobs or Mathless. (¶ 26.) They never sought legal advice from either Ginsberg Jacobs or Mathless. (¶ 27.) They never received legal advice from either Ginsberg Jacobs or Mathless. (¶ 28.) They never divulged confidential information to either Ginsberg Jacobs or Mathless or received confidential information from either Ginsberg Jacobs or Mathless. (¶ 29.) They never paid either Ginsberg Jacobs or Mathless for the provision of legal services. (¶ 30.) They have never had any direct communication with either Ginsberg Jacobs or Mathless. (¶ 31.) Plaintiffs have never relied upon

any representation by Ginsberg Jacobs or Mathless that either was legal counsel for any Plaintiff. (¶ 31).

As such, the pleadings and admissions on file show that there is no genuine issue as to any material fact. For the foregoing reasons, this Court should conclude that, as a matter of law, Mathless and Ginsburg Jacobs owed Plaintiffs no duty of care and, for this reason, both are entitled to summary judgment.

### III. ALL PLAINTIFFS KNOWINGLY AND VOLUNTARILY WAIVED ALL CLAIMS AGAINST MATHLESS AND GINSBERG JACOBS

In this case, the Guaranties executed by each Plaintiff contain a provision that waives liability against the lawyer that confesses judgment. Based on the clear, unambiguous and unequivocal language of the Guaranties, Plaintiffs are barred from any claims, including those raised in the instant litigation, against any attorney for actions relating to the execution of the confession of judgment.

In the Confession of Judgment clauses contained in each Guaranty, each Plaintiff (the Guarantors) agreed to the following unambiguous terms:

> Guarantor hereby irrevocably authorizes and empowers any attorney-at-law to appear in any court of records and to confess judgment against Guarantor for the unpaid amount of this Guaranty as evidence by an affidavit signed by an officer of Lender setting forth the amount then due, attorneys' fees plus costs of suit, and to release all errors, and waive all rights of appeal.
> \*    \*    \*
> Guarantor hereby waives and releases any and all claims or causes of action which Guarantor might have against any attorney acting under the terms of authority which Guarantor has granted herein arising out of or connected with the confession of judgment hereunder. (¶¶ 14, 15, 16.)

"A release is a contract wherein a party relinquishes a claim to a person against whom the claim exists, and a release is subject to the rules governing the construction of contracts." *Carona v. Ill. Cent. Gulf R. Co.*, 203 Ill.App.3d 947, 951 (5th Dist. 1990). When reviewing a

release, a court should apply contract law principles because a release is a contract. *Farm Credit Bank of St. Louis v. Whitlock,* 144 Ill.2d 440, 447 (1991).

Under Illinois law, the court "must interpret the words of the contract with their common and generally accepted meanings" and must construe the words of the contract "within the context of the contract as a whole." *William Blair & Co. v. FI Liquidation Corp.*, 358 Ill.App.3d 324, 335 (1st Dist.2005) (internal citations omitted). The court's primary objective is give effect to the parties' intent. *Gallagher v. Lenart,* 226 Ill.2d 208, 232, (2007). "A court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties; intent." *Id.* at 233. Clear and explicit written agreements that are unambiguous will be enforced as written without the assistance of extrinsic or parol evidence. *Rakowski v. Lucente,* 104 Ill.2d 317, 323 (1984). A court should only resort to extrinsic evidence to determine the parties' intent where a contract is susceptible to more than one meaning. *Gallagher,* 226 Ill.2d at 233. Where the terms of a release are "clear and explicit, the court must enforce them as written." *Rakowski v. Lucente*, 104 Ill.2d 317, 323 (Dist. 1984).

Moreover, parties to contracts, especially business contracts, are presumed to have read, understood, and agreed to be bound to the unambiguous terms of the contract they sign. *IFC Credit Corp. v. Rieker Shoe Corp.*, 378 Ill.App.3d 77, 93 (1st Dist. 2007); *Terry v. State Farm Mut. Auto. Ins. Co.*, 287 Ill.App.3d 8, 15 (2nd Dist. 1997). "Every provision of a contract must, if possible, be given effect because it is presumed that each was inserted deliberately and for a purpose." *Dairyland Ins. Co. v. Linak*, 208 Ill.App.3d 892, 895-96 (2nd Dist. 1991).

Here, by the clear, unambiguous language contained in the Confession of Judgment clauses in each Guaranty, Plaintiffs have waived and released any and all claims against

Mathless "arising out of or connected with the confession[s] of judgment" executed by Mathless on behalf of each Plaintiff.

Moreover, by virtue of the waiver and release of claims against Mathless, Plaintiff possesses no *respondeat superior* claim against Mathless's employer, Ginsberg Jacobs. *Gilbert v. Sycamore Mun. Hosp.*, 156 Ill.2d 511, 528-29 (1993).

For the foregoing reason, this Court should enter summary judgment in favor of both Defendants and against all Plaintiffs.

## CONCLUSION

Wherefore, defendants, Ginsberg Jacobs, LLC, and Gabriel Mathless pray that this Court enter summary judgment in favor of all Defendants and against all Plaintiffs, and for any other relief that this Court deems fair and just.

Respectfully submitted,

TRIBLER ORPETT & MEYER, P.C.

By: *s/Jeremy N. Boeder*
   One of the Attorneys for Defendants, Ginsberg Jacobs, LLC, and Gabriel Mathless

Harlene G. Matyas, Esq. - ARDC# 1796879
 (hgmatyas@tribler.com)
Jeremy N. Boeder, Esq. - ARDC# 6285771
 (jnboeder@tribler.com)
TRIBLER ORPETT & MEYER, P.C.
225 West Washington, Suite 2550
Chicago, Illinois 60606
Telephone: (312) 201-6400
Fax: (312) 201-6401

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of **Defendants' Memorandum in Support of Their Motion for Summary Judgment,** was served upon:

Elliot R. Schiff
Schiff Gorman, LLC
One East Wacker Drive, Ste. 1100
Chicago, IL 60601
(312) 345-7200
(312) 345-8645
eschiff@schiff-law.com

service was accomplished pursuant to ECF as to Filing Users and complies with LR 5.5 as to any party who is not a Filing User or represented by a Filing User by mailing a copy to the above-named attorney or party of record at the address listed above, from 225 W. Washington Street, Suite 2550, Chicago, IL 60606, prior to 5:00 p.m. on the 22nd day of July, 2016, with proper postage prepaid.

           s/*Jeremy N. Boeder*
           an Attorney

Harlene G. Matyas, Esq. - ARDC# 1796879
(hgmatyas@tribler.com)
Jeremy N. Boeder, Esq. - ARDC# 6285771
(jnboeder@tribler.com)
TRIBLER ORPETT & MEYER, P.C.
225 West Washington, Suite 2550
Chicago, Illinois 60606
Telephone: (312) 201-6400
Fax: (312) 201-6401